**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-cr-40027-JAR |
| ) | |
| TOMMY LYNN SHERRILL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This case comes before the Court on Defendant Tommy Lynn Sherrill's Motion to Suppress (Doc. 9). Defendant moves to suppress all evidence seized during a warrantless search of a hotel room, as well as evidence seized later, in the execution of a search warrant for that same room. The Court has thoroughly considered the parties' briefs and the evidence presented at the November 4, 2011 hearing on this motion, and the Court is now prepared to rule. Because defendant failed to prove that his status in the room conferred upon him a reasonable expectation of privacy, the Court denies his motion, for lack of standing. Moreover, because exigent circumstances justified the initial warrantless entry of the room, the Court concludes that there is no basis to suppress any evidence seized in the initial entry, nor any evidence seized later, when the officers obtained a search warrant for the room.

**I.     Factual Background**

Based on the testimony and evidence admitted at the hearing on this motion, the Court finds as follows. While on patrol in the area around the Plaza Inn Hotel in Topeka, Kansas, Topeka police officer Jana Harden observed a pickup truck matching the description of a truck

that had been reported stolen. After checking the Vehicle Identification Number, Harden determined that the truck was in fact the vehicle that had been reported stolen. Immediately thereafter, Harden spoke with two individuals who were staying at the Plaza Inn Hotel. These two individuals told Harden that they had seen two white males—one of shorter height with red hair and one of taller height with a buzz cut—coming and going from the truck to the Traveler's Inn motel, located next door to the Plaza Inn Hotel. These two witnesses told Harden that the two men had been staying in a room on the first floor of the Traveler's Inn. The witnesses also told Harden that the two men had been driving another vehicle, a silver Chevy Blazer.

Officer Harden then went to the Traveler's Inn to continue her investigation. At the Traveler's Inn, Harden found a silver GMC parked directly in front of room 127. She suspected that the silver GMC was the same vehicle that the witnesses at the Plaza Inn Hotel had described, because the GMC looked similar to a Chevy Blazer. After finding this vehicle, Harden called for backup and asked that the backup officer obtain a list of the registered guests at the Traveler's Inn.

Officer Michael Cruse then arrived to assist Harden, and the two officers together reviewed the list of registered guests at the Traveler's Inn. The officers did not recognize any names on the list, and neither Defendant Tommy Sherrill nor the co-defendant, Matt Slusser, were on the registered-guest-list. With none of the names on the registered-guest-list raising any suspicion, the officers decided to gather information by knocking on doors of the guest rooms—a knock-and-talk investigation—to try to find the owner of the silver GMC. They decided to begin at room 127 because the silver GMC was parked right in front of that room. As the officers approached that room, a woman exited. The woman told the officers that she had been visiting

her stepson, Matt Slusser, who was in room 127 with several of his friends. Officer Harden knew Mr. Slusser and knew that he had red hair. The woman also told the officers that she owned the silver GMC. The woman then entered the silver GMC and drove away.

Officers Harden and Cruse then approached the door of room 127, to try to talk to the occupants of that room. The officers did not intend to enter Room 127, nor did they intend to arrest anyone inside. Harden merely wanted to talk to the occupants of Room 127, in an attempt to locate the two men the witnesses had described as having been coming and going from the stolen pickup parked at the Plaza Inn. Harden observed that the door to Room 127 was closed, as were the shades on the windows. Standing outside the door, neither Harden nor Cruse could see inside of the motel room. But, as Harden knocked on the door, the door swung about one-half or one-fourth of the way open. The door had not been latched. Officers Harden and Cruse were surprised that the door came open, because Harden had not used a forceful knock on the door. Officer Harden immediately announced that they were with the Topeka Police Department.

Through the now partially open door, Harden saw two men. One man was Mr. Slusser—a shorter man with red hair—and the other was Defendant Sherrill—a taller man with a buzz cut. Officer Harden knew Mr. Slusser, and while she did not know Defendant, she noted that he matched the description of one of the men associated with the stolen vehicle. Officer Harden was in full police uniform, and when the two men saw her, they immediately ran to an alcove on the other side of the room, which cut back from the main wall of the hotel room. The wall of the alcove partially shielded the men from the officers' view. Harden could not see below the men's shoulders. And so while still outside of the motel room, she ordered them to

come into the room and to show their hands. Mr. Slusser watched Officer Harden, but he and Defendant Sherrill refused to show their hands and refused to move from behind the wall of the alcove. Harden testified that by watching the head and shoulders of Defendant and Mr. Slusser, she could tell they were "messing with something" with their hands. She could not, however, see what they were doing with their hands.

Because of the men's furtive activity, Officers Harden and Cruse feared that the men were in possession of weapons and might attempt to use the alcove as a barricade. The officers decided to enter the room. Officer Cruse testified that while the officers could have stayed in the parking lot and waited to get a search warrant, they did not believe they would be safe if they did. The motel room faced the parking lot; and the parking lot offered the officers very little cover. While the door and the windows facing the parking lot were the only exits to the motel room and thus the officers would have seen anyone who attempted to leave, the alcove would have given Defendant and Mr. Slusser a barricade position from which they could shoot. The officers also did not know whether there were other people in the room besides Defendant and Mr. Slusser. The officers decided that for their own safety and for the safety of the others in the motel, they needed to enter the room and control the situation before anyone was hurt.

Drawing their guns, the officers entered the room without permission or a warrant. Upon entry and moving towards the alcove area, Officer Harden could see Defendant's and Mr. Slusser's hands; and she saw them throwing plastic baggies behind them. Based on what she saw in the baggies and her experience, Harden believed the baggies contained drugs. Officer Cruse again told the two men to show their hands and get down on the ground, but they refused. Instead, Defendant and Mr. Slusser yelled obscenities at the officers. The officers then took the

two men down to the ground to handcuff them. Officer Cruse handcuffed Mr. Slusser. Officer Harden handcuffed Defendant, and as she did, she immediately saw a gun under the bed within reaching distance of Defendant. Officer Harden asked Officer Cruse to secure the gun. Cruse secured the gun by releasing the magazine, emptying the chamber of ammunition, and placing the gun and ammunition is separate envelopes in the room. The officers did not seize or take custody of the gun at this time. From the time that the officers knocked on the door to the time they handcuffed the two men, everything escalated very quickly, requiring that the officers make rapid decisions.

After the two men were handcuffed, the officers focused on the two other individuals in the room, Heather Hurley and Rey Balzaldua. Ms. Hurley, who also yelled at the officers when they entered the room, sat on one of the beds as the officers handcuffed Defendant and Mr. Slusser, and Mr. Balzaldua hid in the bathroom. The officers took everyone in the room into custody. As they were securing the room and taking the four occupants into custody, the officers found needles on Defendant Sherrill; and Defendant Sherrill had a lanyard around his neck from which hung keys to the stolen truck.

With everyone in custody, the officers secured the room and posted an officer outside of the door. Officer Harden signed an application and affidavit for a search warrant, explaining how they entered and what they saw in the room. Once the officers obtained a search warrant, they went back to Room 127, and during their search, the officers seized the gun, bags of methamphetamine, marijuana, pills, surveillance equipment, cell phones, and drug paraphernalia including a scale and glass pipes. The surveillance equipment was a closed-circuit monitor which recorded activity outside the door. Mr. Balzaldua told police that Mr. Slusser had brought

the equipment to the room.

## II.     Discussion

Defendant Sherrill argues that the officers violated his Fourth Amendment rights because they conducted a warrantless search of room 127 when knocking on the door and peering into the room and also when entering the room.  Defendant further argues that no exigent circumstances justified the warrantless entry and as a result all evidence found after the warrantless entry must be suppressed, including evidence found after a search warrant was secured.  The Government argues that Defendant had no reasonable expectation of privacy in the hotel room and that the officers were justified by exigent circumstances because they entered the room to protect their own safety.  The Court finds that Defendant did not have an expectation of privacy in the hotel room, and even if he did, the officers did not violate his Fourth Amendment rights.

### A.     Defendant Failed to Demonstrate a Reasonable Expectation of Privacy

The Fourth Amendment protects persons from unreasonable searches of their "person, houses, papers, and effects."[1]  Fourth Amendment protection, however, is only available if the defendant demonstrates a reasonable expectation of privacy in the place searched, such that the search personally aggrieved the defendant.[2]  That the evidence was obtained in violation of someone else's Fourth Amendment rights is immaterial—the expectation must be personal to the defendant.[3]  To determine a reasonable expectation of privacy, courts apply a two-factor test,

---

[1] U.S. Const. amend. IV.

[2] *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also United States v. Conway*, 854 F. Supp. 834 (D. Kan. 1994).

[3] *United States v. Carr*, 939 F.2d 1442, 1444 (10th Cir. 1991).

6

determining "(1) whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy, and (2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable."[4]  The burden falls on the defendant to prove a reasonable expectation of privacy by a preponderance of the evidence.[5]

Here, Defendant claims a reasonable expectation of privacy in a motel room registered to someone else.  A person can have a reasonable expectation of privacy in the home of another when staying as an overnight guest and, in some circumstances, when the individual is a social guest in the home of another but does not stay overnight.[6]  But the person must demonstrate a "degree of acceptance into the household" and an "ongoing and meaningful connection to [the] home" before courts recognize a reasonable expectation of privacy.[7]  The Tenth Circuit has applied this reasoning to motel rooms as well: "Overnight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property on which they are staying."[8]  But an individual's presence in a motel room does not prove a reasonable expectation of privacy there.[9]  In determining whether the expectation of privacy is reasonable, the Tenth Circuit has

---

[4]*United States v. Cooper*, 283 F. Supp. 2d 1215, 1245 (D. Kan. 2003) (quoting *United States v. Jones*, 213 F.3d 1253, 1260 (10th Cir. 2000)) (internal quotation marks omitted).

[5]*See Carter*, 525 U.S. at 88; *Conway*, 854 F. Supp. at 837.

[6]*United States v. Thomas,* 372 F.3d 1173, 1176 (10th Cir. 2004) (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990); *United States v. Rhiger*, 315 F.3d 1283, 1286–87 (10th Cir. 2003)).

[7]*United States v. Poe*, 556 F.3d 1113, 1122 (10th Cir. 2009) (quoting *Rhiger*, 315 F.3d at 1286–87) (internal quotation marks omitted).

[8]*United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004) (citing *Carter*, 525 U.S. at 89–90; *Stoner v. California*, 376 U.S. 483, 489–90 (1964)).

[9]*See Carter*, 525 U.S. at 89 ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."); *see also United States v. Robertson*, 297 F. App'x 722, 726 (10th Cir. 2008) (finding no reasonable expectation of privacy when "the suite was not registered to any of the occupants, and no personal items indicating an overnight stay were present.  All evidence indicated that the suite was used only to manufacture and distribute illegal drugs"); *United States v.*

"traditionally considered whether the individual had lawful ownership or control of the premises searched," and whether the defendant had the status of an overnight guest.[10]  Put differently, the Tenth Circuit requires "a defendant to demonstrate that he was the registered occupant of the room or that he was sharing it with the person to whom the room was registered."  Without this showing, the visitor to the motel room does not have a reasonable expectation of privacy.[11]  In *United States v. Carr*, for example, the Tenth Circuit found that defendant had no reasonable expectation of privacy in the hotel room where he had been staying for three weeks because the he failed to show that he was the registered guest or that he shared the room with the registered guest.[12]

    Here, the government argues that Defendant has not established a reasonable expectation of privacy in the motel room because he was not the registered guest and was only present in the room for commercial purposes.  Defendant, on the other hand, argues that he was a social guest in the motel room, and as such, had a reasonable expectation of privacy in the room.  To support his argument, Defendant cites *Stoner v. California*, in which the Supreme Court stated that a guest in a motel room is entitled to Fourth Amendment protection against unreasonable searches

---

*Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999) (finding no reasonable expectation of privacy even though defendant had paid for the room and had a key to the room because it was not registered to his name and no evidence indicated that he was a co-occupant with the registered guest); *United States v. Cantley*, 130 F.3d 1371, 1377–78 (10th Cir. 1997) (noting that because defendant was not the registered guest, produced no evidence on why he was in the room, who the registered guest was, or his relationship to the registered guest, he did not have a reasonable expectation of privacy in the room); *United States v. Deninno*, 29 F.3d 572, 576 (10th Cir. 1994) (holding that because defendant was not the registered guest at the hotel room, he did not have a reasonable expectation of privacy there).

[10] *United States v. Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999) (citing *Carr*, 939 F.2d at 1446); *see also Carter*, 525 U.S. at 89.

[11] *Gordon*, 168 F.3d at 1126 (citing *Carter*, 525 U.S. at 89).

[12] 939 F.2d at 1447.

and seizures.[13]  In *Stoner*, however, the Supreme Court only discussed a guest registered on the motel roster and not merely a visitor to the room.[14]  So *Stoner* does not stand for the proposition that every visitor in a motel room has a reasonable expectation of privacy.  Nor does *Stoner* diminish Defendant's burden to prove a reasonable expectation of privacy by showing that he was a registered occupant of the room or was sharing it with the registered occupant.

Here, Defendant has not met that burden.  Defendant offered no evidence to show that he was a registered guest, that he was staying at the motel room with the registered guest, or that he had a relationship with the registered guest.  In fact, the only evidence brought out at the suppression hearing concerning Defendant's stay at the motel was explored by the Government during Officer Harden's testimony.  Officer Harden testified that Ms. Hurley described Defendant as a friend of the registered guest, Mr. Balzaldua.  Ms. Hurley also told Officer Harden that Defendant had been "in and out" for a couple of days before the police arrived at the motel.  She did not indicate whether Defendant had been an overnight guest at the motel room, what his purpose was in visiting the room, or how long he had been in the motel room—she only knew that he and Mr. Slusser had been "in and out."  So while the evidence suggests that Defendant was a friend to the registered guest and that he was "in and out" of the room, he has not shown that he had an ongoing and meaningful connection to the motel room, such that his expectation of privacy in the room was reasonable.  In fact, the evidence shows that it is just as likely that Defendant was only in the room for commercial purposes to sell drugs and thus had

---

[13] 376 U.S. 483, 489 (1964) (citing *Johnson v. United States*, 333 U.S. 10 (1948)).

[14] *See id.*

no expectation of privacy.[15] He and Mr. Slusser had been visiting the room together, and the evidence suggests that Mr. Slusser brought surveillance equipment with him. While this evidence does not prove that Defendant was in the room only for commercial purposes, the Court cannot, in any event, find that Defendant has met his threshold burden of showing a reasonable expectation of privacy in the place searched. As such, he cannot claim a violation of his Fourth Amendment rights in that room. Therefore, the Court denies Defendant's motion to suppress.

### B.  The Government Proved that the Search of the Room Was Reasonable

Even if Defendant had proved a reasonable expectation of privacy in the motel room, the Court must deny the motion to suppress because the Government has proved that the search of the motel room was reasonable. The government met its burden in showing that an exception to the warrant requirement justified the officers' search.[16] First, no search occurred when the officers knocked on the door and looked in the room. Second, the officers' warrantless entry into the motel room was justified by exigent circumstances. Third, the officers found a gun and drugs in plain view once they entered the room on the exigent circumstances, and those items supplied the probable cause for the search warrant. As a result, even if Defendant had a reasonable expectation of privacy in the motel room, no violation of his Fourth Amendment rights occurred during either search of the room.

#### 1.  No Search Occurred Until the Officers Entered the Motel Room

Defendant contends that when the officers knocked on the motel room door, the door

---

[15]*See Carter*, 525 U.S. at 90–91 (finding no legitimate expectation of privacy where the defendant used the property only for commercial purposes).

[16]*See United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998).

opened, and they looked inside, the officers conducted a search because the door opened as a result of police action.  But not all police action constitutes a search.[17]  Here, the officers approached the building intending to perform a "knock and talk."  That officers approach a building without a search warrant does not create a constitutional violation.[18]  And "a 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment . . . ."[19]  So as the officers knocked on the door, they had not conducted a search in contravention of the Fourth Amendment.

Nor did the officers contravene the Fourth Amendment when the door swung open, allowing the officers to see inside.  Officer Harden did not use a forceful knock or intend for the door to open.  In fact, both she and Officer Cruse were surprised when the door opened.  Thus, the result was inadvertent.  Once the door accidentally opened, part of the interior of the room was in plain view and the officers did not need a warrant to view inside.[20]

Defendant cites cases where courts found that officers peering into houses constituted a search.[21]  But in each of those cases, the officers took affirmative steps, moving to non-public

---

[17]*See Illinois v. Caballes*, 543 U.S. 405, 408 (2005) ("Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment.'" (quoting *United States v. Jacobsen*, 466 U.S. 109, 114 (1984))).

[18]*United States v. Larson*, 63 F. App'x 416, 426 (10th Cir. 2003).

[19]*United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006).

[20]*See United States v. Neff*, 61 F.3d 906, 1995 WL 428175, at *1 (7th Cir. July 18, 1995) (stating that officers properly seized a gun even though it only came into plain view after an officer accidentally knocked over a bag); *United States v. Yockey*, 654 F. Supp. 2d 945, 955 (N.D. Iowa 2009) (admitting photos as evidence even though they were only found because the officer accidentally viewed them on defendant's phone while trying to shut it off); *United States v. LaMorte*, 744 F. Supp. 573, 576 (S.D.N.Y. 1990) (finding that once an agent accidentally dislodged drug packets in a search for books and records, the drugs were in plain view).

[21]*See State v. Morris*, 999 P.2d 283, 285 (Kan. Ct. App. 2000); *State v. Horn*, 91 P.3d 517, 523 (Kan. 2004); *Mitchell v. State*, 742 S.W.2d 895, 897–98 (Ark. 1998).

vantage points or intentionally opening a door, to peer into the house.[22]  As described above, Officers Harden and Cruse took no intentional action to view inside the room.  Thus, the instant case is distinguishable because the officers did not intentionally open the door or avail themselves of a non-public vantage point.  Therefore, the officers did not perform a search in contravention of the Fourth Amendment when knocking on the door of the motel room.

### 2. Exigent Circumstances Justified the Officers' Entry into the Motel Room

When officers entered the motel room without a search warrant, however, they conducted a warrantless search.[23]  A warrantless search is presumptively unreasonable, but this presumption is subject to certain exceptions.[24]  The exigency exception, for example, excuses a warrantless entry "when the circumstances posed a significant risk to the safety of a police officer or a third party."[25]  "This exception applies if (1) the officers had an objectively reasonable basis to believe an immediate need to enter existed to protect the safety of themselves or others, and (2) the conduct of the entry was otherwise reasonable."[26]

Under the first prong, the Court must evaluate whether the officers had reasonable grounds to believe they had an immediate need to enter the motel room "'guided by the realities of the situation presented by the record' from the viewpoint of 'prudent, cautious, and trained officers.'"[27]

---

[22]*See Morris*, 999 P.2d at 285; *Horn*, 91 P.3d at 523; *Mitchell v. State*, 742 S.W.2d at 897–98.

[23]*See Stoner v. California*, 376 U.S. 483, 486 (1964).

[24]*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

[25]*United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2010).

[26]*United States v. Layman*, 244 F. App'x 206, 210 (10th Cir. 2007); *United States v. Martin*, 613 F.3d 1295, 1303 (10th Cir. 2010).

[27]*United States v. Najar*, 451 F.3d 710, 178–19 (10th Cir. 2006) (quoting *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)).

Here, the totality of the circumstances show that the officers reasonably believed that an immediate need to protect themselves justified the warrantless entry into the motel room. Officer Harden knew of Mr. Slusser's criminal history when she approached the door. When she looked into the room, she saw two men matching the description of the suspects for whom the officers were looking. Upon seeing the officers, Defendant and Mr. Slusser immediately fled behind a wall in the room, which concealed what they were doing with their hands, and they refused the officers' orders. The officers had to make a quick decision in a rapidly escalating situation. The officers believed that the two men were in the process of pulling out weapons, and the officers did not believe that the parking lot would give them adequate protection if the men used the alcove as a barricade. Additionally, they did not know if others were inside the room, given that Mr. Slusser's stepmother had told the officers that Mr. Slusser was in the motel room with several friends. To maintain the safety of everyone involved, the officers took the only step they believed reasonable under the circumstances—they moved into the motel room to take control of the situation. Based on the behavior of Mr. Slusser and Defendant, the two men's furtive movements, the officers' belief that they had committed criminal activity, the possible barricade provided by the motel alcove, the inadequate protection offered by the parking lot, and the rapid escalation of the situation, the Court finds that the "officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect [their] safety."[28]

Defendant, however, argues that because the officers could have retreated to the parking lot and waited for a search warrant to enter the motel, no exigent circumstances existed to justify a warrantless entry. The Court disagrees. "Officers are not required to turn and run from

---

[28] *See Martin*, 613 F.3d at 1304 (alteration in original) (quoting *United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008)) (internal quotation marks omitted).

suspected criminals nor are they required to take unnecessary risks in the field when posed with a threat to themselves or others."[29]  Retreat may have been an option, but "it was surely a reasonable alternative for the officers to believe that they needed to enter the building immediately to disarm [the two men] for their own safety and the safety of others."[30]  The prompt entry was objectively reasonable given the potential that someone could be injured.[31]

Having found that the officers had an objectively reasonable basis to enter the motel room, the Court considers the second prong, which requires that the Court determine whether the scope of the search was reasonable.[32]  When the officers entered the motel room, Officer Harden saw the two men throw baggies behind them, which based on her experience in law enforcement she believed contained drugs.  Despite requests to show their hands, Defendant and Mr. Slusser refused and continued to yell obscenities at the officers, prompting the officers to handcuff the two men to ensure their safety and restore order.  While handcuffing Defendant, Officer Harden saw a gun lying on the floor under the bed.  Officer Cruse made the gun safe by taking out the ammunition, placing the gun and ammunition in separate envelopes, and placing the gun away from the occupants in the room.  Once all occupants of the room were taken out, the officers exited the room, with one officer staying outside the motel room while others obtained the search warrant.  Only after obtaining a search warrant did the officers resume any search or seize any evidence.  In sum, the officers reasonably effected the search.

    **3.**    **Once Inside the Room, the Officers Saw Drugs and a Gun in Plain View, Which Supplied Probable Cause for the Search Warrant.**

---

[29]*Id.* (internal quotation marks and citation omitted).

[30]*Id.* (citing *United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir. 2007)).

[31]*See id.*

[32]*See United States v. Layman*, 244 F. App'x 206, 211 (10th Cir. 2007) (citing *Najar*, 451 F.3d at 720).

Defendant argues that the search warrant was fruit of the poisonous tree because it was supported by evidence found during the officers' initial warrantless entry. Again, the Court disagrees. Once the officers were lawfully present in the motel room under exigent circumstances, the plain view doctrine applied and the officers could "seize incriminating evidence found in plain view with the officer's lawful right of access."[33] Evidence observed in plain view can also supply officers with probable cause to apply for a search warrant for other evidence of similar illegal activity.[34]

Officer Harden was lawfully within the motel room when she saw the gun and saw Defendant throw baggies, which based on her experience in law enforcement she believed contained drugs. The officers could thus use this evidence to support the finding of probable cause to search. And as a result, the search warrant was not fruit of the poisonous tree.

## III.   Conclusion

Defendant Sherrill suffered no violation of his Fourth Amendment rights that would justify suppression of any evidence found in Room 127. First, Defendant did not have a reasonable expectation of privacy in the motel room. Second, even if he did have an expectation of privacy, the search did not violate his Fourth Amendment rights. The officers' warrantless entry into the motel room was justified by exigent circumstances. Once lawfully inside the room, the officers saw the gun and drugs in plain view. This evidence formed the basis for probable cause supporting the search warrant and second search of the room. Therefore, no violation of Defendant's Fourth Amendment rights occurred, and the Court must deny

---

[33] *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004) (citing *Coolidge v. New Hampshire*, 403 U.S. 433 (1971)).

[34] *See United States v. Marcks*, 110 F.3d 74, 1997 WL 163522, at *5 (10th Cir. Apr. 8, 1997).

Defendant's Motion to Suppress.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress (Doc. 9) is **DENIED**.

**IT IS SO ORDERED**.

Dated: November 16, 2011

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE